UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH VITI,

                Plaintiff

                -against-

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

                Defendant.
----------------------------------------------------------X

10 Civ. 2908 (ALC) (MHD)

**MEMORANDUM & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

    This case concerns the extent of Joseph Viti's disability following his witnessing of the terrorist attacks of September 11, 2001. After being denied long-term disability benefits by The Guardian Life Insurance Company of America ("Guardian"), Viti missed his deadline for appeal of that decision. He filed this action to compel reconsideration of his application well after the contractual three-year statute of limitations had run. When Guardian moved to dismiss the action as untimely, Viti claimed that his disability was so severe as to warrant equitable tolling. The issue was referred for factual findings to Magistrate Judge Dolinger, who declined to toll the statute of limitations. After reviewing Magistrate Judge Dolinger's sagacious Report and Recommendation ("R&R"), Viti's objections, and the record, I adopt the R&R in its entirety. The motion to dismiss counts one and two of the amended complaint is granted.

**I.    Introduction**

    Plaintiff Joseph Viti brought suit against defendant Guardian pursuant to the Employee Retirement Income Security Act ("ERISA"), challenging Guardian's denial of disability benefits under a long-term disability plan offered by Viti's former employer ("the Plan"). In October

1

2005, Viti became disabled as a result of witnessing firsthand the terrorist attacks of September 11, 2001. The trauma of what he had seen changed him; he became severely agoraphobic, grew withdrawn from his family, and would cry frequently and unexplainably. Shortly thereafter, he was diagnosed with General Anxiety Disorder and applied for disability benefits under the Plan. Guardian denied Viti's application and explained the process for appealing the decision, specifically warning Viti that no appeal could be brought more than six months after the date of the initial denial. Viti failed to timely appeal this denial through the Plan's internal procedures. After missing the appeal deadline, Viti made several requests for extensions from Guardian, all of which were denied. Viti then filed this action, seeking to compel Guardian to consider his appeal of its denial of long-term disability benefits.

## II.     Procedural Posture

Viti first brought this action against Guardian and his former employer, Sterling Commodities Corporation, on April 5, 2010. Guardian moved to dismiss the complaint, arguing that it was an improper defendant and that the action was untimely. Viti cross-moved for summary judgment on all counts based on the documentary evidence submitted to the court. Judge McMahon granted Guardian's motion to dismiss with respect to two counts of the complaint, finding that Guardian was not a proper defendant. Viti v. The Guardian Life Insurance Company of America, 817 F. Supp. 2d 214 (S.D.N.Y. 2011). Judge McMahon also found, inter alia, that a three-year statute of limitations written into the contract applied, and that the statute of limitations began to run when Viti filed his proof of loss on September 14, 2006, rendering Viti's claim untimely. Id. at 224–25. To determine whether equitable tolling should be applied, Judge McMahon referred this matter to Magistrate Judge Dolinger for an evidentiary

2

hearing. Id. at 235. Magistrate Judge Dolinger received evidence on whether Viti's 205 day delay in bringing his action should be excused. On October 5, 2012, Magistrate Judge Dolinger issued a Report and Recommendation ("R&R") in which he determined that Viti could not show that he was so disabled as to warrant *any* tolling whatsoever. Further, Magistrate Judge Dolinger found that even if Viti could show such disability, he was eligible for at most 186 days of tolling, manifestly inadequate to make his April 5, 2010 action timely. Viti filed timely exceptions to the R&R that are fully considered below.

### III. Discussion

The facts of this case were set forth in Judge McMahon's Order dated August 31, 2011, and the Court assumes familiarity therewith.

#### A. *Standard of Review*

A district court may designate a magistrate judge to conduct evidentiary hearings and submit to the court proposed findings of fact and recommendations for the disposition of a motion to dismiss. 28 U. S. C. § 636(b)(1)(B). The recommendations of the magistrate are not binding in and of themselves; the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U. S. C. § 636(b)(1)(C). When reviewing the magistrate's R&R, the court conducts a de novo review of those sections to which parties specifically object. Fed. R. Civ. P. 72(b)(3). Parts of the report to which no objections are raised, on the other hand, may be adopted so long as "there is no clear error on the face of the record." Adee Motor Cars, LLC v. Amato, 388 F. Supp. 2d 250, 253 (S.D.N.Y 2005).

**B.** *The Report and the Objections*

Judge McMahon found that the statute of limitations would have begun to run on September 14, 2006, when Viti filed proof of loss with Guardian. Thus Viti had to bring any legal action against the Plan by September 14, 2009. This action, filed on April 5, 2010, would only be timely if Viti were entitled to 205 days of equitable tolling. Magistrate Judge Dolinger accepted these findings and determined that Viti knew he had been denied benefits by May 11, 2007 at the latest, when he attempted to obtain legal assistance regarding the "*denial* of disability benefits." (R&R at 23) (emphasis in original.) Magistrate Judge Dolinger reasoned Viti was potentially eligible for a maximum tolled period of 186 days, which was still inadequate to make his action timely. (Id.) Further, Magistrate Judge Dolinger found Viti was not entitled to any tolling whatsoever. (Id. at 28.) While Viti was clearly disabled and unable to work, Viti's successful application for Social Security benefits defeated the argument that Viti was unable to protect his legal rights. (Id. at 30.) Viti also failed to show that he took any steps to protect his rights during the tolled period; indeed, Magistrate Judge Dolinger noted that Viti had tried to hide the denial letter in a mail drawer after reading it. (Id. at 34.)

Viti objects to Magistrate Judge Dolinger's recommendation on four primary grounds. First, he argues that Judge McMahon erred in enforcing the contractual three-year statute of limitations rather than imposing a six-year statute of limitations under New York state law. Second, he asserts that, contrary to Magistrate Judge Dolinger's findings, he is eligible for equitable tolling because of an inability to function in society generally. Third, he claims that Judge McMahon erred in finding that the statute of limitations began to run on September 14, 2006. Lastly, he argues that Guardian has improperly accepted premium payments from Viti

despite his termination from the Plan.

### 1. *Plaintiff's First and Third Objections*

Viti's first and third objections ask this Court to review the determinations of Judge McMahon. Since Judge McMahon sat with coordinate jurisdiction in this matter, the law of the case doctrine applies. "[A]s most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Pepper v. United States, 131 S. Ct. 1229, 1250 (2011) (internal quotations omitted). However, the doctrine will not apply where a court's determination is in clear error or there is an intervening change in the law. Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009). Viti argues that Judge McMahon's findings were clear error or, alternatively, that the Second Circuit's decision in Epstein v. The Hartford Life & Accident Insurance Company constitutes an intervening change in the law.

Viti's first argument is without merit. The arguments about the appropriate statute of limitations and when it would have begun to run were fully briefed and argued on the motion to dismiss filed before Judge McMahon. Considering all of the arguments, Judge McMahon issued a thorough and well-reasoned opinion holding that a three year statute of limitations applied to this case, and that the statute of limitations was triggered when the proof of loss was filed on September 14, 2006. This Court agrees with those conclusions and adopts Judge McMahon's reasoning herein.

Viti next argues that Epstein v. The Hartford Life & Accident Insurance Company constitutes an intervening change in law about when a statute of limitations begins to run. 449 Fed. App'x. 46 (2d Cir. 2011). In Epstein, the Second Circuit held that an ERISA fiduciary's

5

post-denial request for additional information in an initial consideration of the plaintiff's application for benefits reset the statute of limitations. Id. at 49. After unsuccessfully applying for long-term physical disability coverage beginning in 2005, the plaintiff was approved for two years of long-term mental disability coverage for the period from October 2005 – October 2007. The fiduciary subsequently requested additional information to determine whether to approve physical disability coverage for the years following October 2007, a new period in time altogether. Epstein v. The Hartford Life & Accident Insurance Company, 2010 WL 3359480 at *3 – *4 (S.D.N.Y. Aug. 25, 2010). Thus, the court found, the request for information was an initial consideration, rather than a reconsideration, of plaintiff's eligibility. Here, on the other hand, Guardian's denial letter does not request more information for the consideration of Viti's application; rather, it alerts Viti to additional documentation needed for an appeal of the denial. (Joint Ex. 11, GL 122) (explaining that "[s]hould [Viti] wish to *appeal* this decision" he must submit "[a]dditional medical information for *reconsideration*") (emphasis added.)

As neither of Viti's arguments is persuasive, the Court sees no reason to revisit Judge McMahon's determinations and, accordingly, rejects Viti's first and third objections.

## 2. *Plaintiff's Second Objection*

Viti, in his second objection, claims he is entitled to equitable tolling of the 205 day delay because of his general inability to function in society. To be eligible for equitable tolling, a plaintiff bears the burden of showing that (1) extraordinary circumstances prevented him from filing his claim on time, and (2) he acted with reasonable diligence in pursuing his application for the tolling period. Lawrence v. Florida, 549 U.S. 327, 336 (2007). Magistrate Judge Dolinger found that Viti could establish neither. The Court has reviewed this determination de novo, and

agrees with Magistrate Judge Dolinger's findings.

### i. *Extraordinary Circumstances Did Not Exist*

A plaintiff seeking equitable tolling must first show that extraordinary circumstances prevented him from timely filing his action. This Circuit has been clear that "[a]s a general matter, we set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). Beyond merely being extraordinary, the circumstances must also be causally linked to late filing. Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). While courts have recognized that a plaintiff may be eligible for equitable tolling "where plaintiff's mental or physical condition prevented her from filing within the time limit," Johnson v. St. Barabas Nursing Home, 588 F. Supp. 2d 465, 469 (S.D.N.Y. 2008), the plaintiff bears the burden of providing a "particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

The extent of Viti's condition is not disputed; both parties agree his disability is genuine and prevented him from returning to work. Indeed, it is hard to understate the effects of the September 11th attack on Viti and on the nation as a whole. Since Viti was able to file an application for Social Security benefits shortly after the tolling period, however, Magistrate Judge Dolinger found that Viti would need to distinguish his incapacity during the tolling period from any incapacity after it. Based on the testimony of Viti's son, which tended to show that Viti's condition had not changed significantly since its onset, Magistrate Judge Dolinger found that Viti's condition during the tolling period was no different from his condition surrounding the tolling period. Thus, since Viti was able to file for Social Security benefits while suffering from

7

his condition, Viti was not so impaired as to be unable to pursue his rights.

Viti claims his application for Social Security benefits is irrelevant because his wife was the true force behind the application. Since only his own mental illness is relevant in tolling calculations, see N.Y. C.P.L.R. § 208; see also Costello v. North Shore University Hospital Center for Extended Care and Rehabilitation, 709 N.Y.S.2d 108 (App. Div. 2d Dep't 2000), he argues, his wife's actions should not be considered in determining his tolling eligibility. As an initial matter, Judge McMahon specifically ruled that N.Y. C.P.L.R. § 208 does not apply to this case because the statute of limitations was not taken from New York state law. Viti, 817 F.Supp.2d at 226. Furthermore, Viti provides no evidence to support the bare assertion that his wife was actually the force behind his Social Security application. Without any evidence to the contrary, the Court accepts Magistrate Judge Dolinger's conclusion that Viti filed his own Social Security application with his wife's assistance. Finally, the cases Viti cites all deal with much more extreme disabilities, making them factually distinguishable. See, e.g., Costello, 709 N.Y.S.2d 108 (allowing tolling for a patient who was nearly brain-dead after severe cerebral hemorrhaging); Henry ex rel. Henry v. City of New York, 94 N.Y.2d 275, 279–80 (1999) (recognizing special status of infant plaintiffs). Accordingly, the Court accepts Magistrate Judge Dolinger's finding that extraordinary circumstances did not exist in this case.

**ii.** *Viti Did Not Act With Reasonable Diligence*

A plaintiff seeking equitable tolling must also show that he acted with reasonable diligence to pursue his application during the tolling period. Lawrence, 549 U.S. at 336. While a plaintiff need not exercise "maximum feasible diligence," Holland v. Florida, 130 S. Ct. 2549, 2565 (2010), he cannot sleep on his rights. Iavorski v. U.S. I.N.S., 232 F.3d 124, 134 (2d Cir.

8

2000). Mental incompetence alone does not excuse a plaintiff from this responsibility; he must attempt to preserve his claims and pursue his rights with reasonable diligence, with due regard for his condition. See, e.g. Davis v. N.Y.C. Transit Authority, 73 Fed. App'x. 524, 525 (2d Cir. 2003).

Magistrate Judge Dolinger found Viti's refusal to open the letter, coupled with his failure to make any attempt to preserve his claim during the tolling period, demonstrated a lack of reasonable diligence. Further, he reasoned that even if Viti's mental condition prevented him from exercising any diligence at all, his wife's failure to act was inexcusable, noting that the letter was left in the couple's mail drawer. That Viti filed his own Social Security application only strengthens Magistrate Judge Dolinger's conclusion. Thus, reasonable diligence for someone in Viti's condition would at the least require some attempt to file an appeal or bring a timely action, and Viti failed to do either.

### 3. *Plaintiff's Fourth Objection*

In his fourth objection, Viti simply restates Count 5 of his complaint, alleging that Guardian improperly accepted premium payments after Viti became ineligible to participate in the Plan. This objection is improper. Neither party moved with respect to this count in front of Judge McMahon, and thus the issue was not briefed or argued in front of Magistrate Judge Dolinger. Accordingly, the claim will not be adjudicated here.

### IV. Conclusion

For the reasons set forth above, the Court finds none of plaintiff's objections persuasive and accordingly, adopts Magistrate Judge Dolinger's R&R in its entirety. The Court emphasizes, however, that this opinion is in no way meant to minimize Viti's suffering. Sitting in the

Southern District, this Court is all too aware of the devastating effects the September 11th attacks have had on countless families. Not even Guardian questions the tragic difficulties with which Viti and his family must now live. Despite the Court's sympathy for the obvious trauma he has suffered, Viti has not presented sufficient evidence to warrant any legal relief for the first two counts of the amended complaint. Accordingly, the Court grants defendant's motion to dismiss both counts. As Judge McMahon previously dismissed counts three and four, only count five remains open for adjudication.

The Court will hold a status conference on January 15, 2014 at 11:30 a.m. The parties shall appear in-person at the Thurgood Marshall United States Courthouse, 40 Foley Square, Courtroom 1306 at the above listed date and time.


**SO ORDERED.**

Dated:      New York, New York
            December 11, 2013

_____
**Andrew L. Carter, Jr.**
**United States District Judge**